514

## In re PATTERSON PARK BLDG. UNION NO. 3 OF BALTIMORE CITY.

District Court, D. Maryland. October 19, 1928.

No. 4986.

J. Calvin Carney, of Baltimore, Md., for petitioners.

Jacob S. New, John H. Hessey, and Clater W. Smith, all of Baltimore, Md., for trustee.

WILLIAM C. COLEMAN, District Judge. The question here involved arises on exceptions taken to the referee's findings with respect to the matter of the joint claim of two creditors. At the hearing on the exceptions, the transcript of the testimony taken before the referee was introduced, and in addition the two creditors testified again. The referee reduced their unsecured claim from $2,667.58 to $1,867.58—that is, a reduction of $800—and allowed the lesser amount as an unsecured claim. There had been a claim for priority, but this has been abandoned.

The material facts which give rise to the present contention of the creditors are as follows: These creditors had, for a number of years, been free share depositors in the bankrupt concern, which was a building association. Its insolvency was brought about by the defalcation of its secretary. In the fall of 1925, with a view to saving the concern from insolvency, its president approached, either in person or through his personal representative, all of the free shareholders, some 25 in number, notified them of the financial embarrassment of the company, and asked each for a 25 per cent. contribution of their holdings in order to make up the shortage. The present claimants, Mr. and Mrs. Fabig, were requested to attend a special meeting of the shareholders of the association; Mr. Fabig did attend, and was asked to, and did subscribe, along with all of the other shareholders, 25 per cent. of his holdings. Payment of these subscriptions was accomplished by each shareholder giving the association an order to withdraw 25 per cent. of his or her savings, which was accordingly charged against his or her account. No actual cash was paid into the association by any shareholder. Each subscriber's account was merely charged with the amount of his subscription, and the association took from him a receipt for the amount subscribed. The receipt given by the present claimants was as follows, being identical with that given by all other shareholders, except, of course, with respect to the amount and passbook number:

"Baltimore, Dec. 19, 1925.
"Received of Patterson Park Building Union No. 3 eight hundred no/100 dollars.
"Book No. 292. Charles F. Fabig.
"$800.00. Minnie Fabig."

There was no contemporaneous or other agreement, oral or written, respecting the conditions under which the subscriptions were made; that is to say, at the meeting nothing whatsoever was said with respect to how these subscriptions were ultimately to be treated, whether as voluntary contributions to capital, whether they were to be paid back in whole or in part, and so forth.

The minutes of this meeting merely show a report of the company's financial condition, a request for subscriptions to be "pledged" against the association's deficit, and a list of the subscribers and the amounts of their respective subscriptions. The minutes conclude as follows: "Mr. Nitzel [secretary] then announced that the deficit was subscribed for, and asked that receipts be drawn for this amount to be signed by those subscribing. The auditing committee was requested to complete the auditing and balance the books of the Union and report at some future meeting."

The president of the association testified that at no time was any promise made by him, or any one else on behalf of the association, that any portion of any subscription would be repaid, but that each subscriber was merely told that there was a possibility of recovering some of the association's embezzled funds, and if and when they were recovered they would be distributed pro rata to the subscribers. On the other hand, the present claimants say that the association's president told them, as an inducement to their subscribing, that they would get the balance of their money back in full after the financial embarrassment was straightened out. There is no

claim, however, that such a representation was made at the meeting, but simply at the preliminary conference. Three other members of the association, who made a similar 25 per cent. contribution of their holdings, testified before the referee that they understood their subscriptions were in the nature of a gift, with no strings to it.

On these facts, claimants contend that since, as a result of bankruptcy, their claim, less the $800 subscription, cannot be paid in full (a dividend of 40 per cent. only being possible), they are therefore entitled to rescind the subscription transaction and to prove their claim for the full amount, including this subscription; in other words, that they are entitled to a dividend upon their entire claim, instead of merely a dividend upon three-fourths of it. On the other hand, the trustee contends, and the referee found, that the $800 subscription was not a loan or an advance to the association, but was a voluntary contribution to its capital, as a result of which the referee reduced the claim by $800.

The court feels that there is nothing in the evidence to justify upsetting the findings of the referee. There is no evidence whatsoever that at the meeting, called specially for the purpose of receiving subscriptions, there was any misunderstanding about the nature of these subscriptions, or that there were any representations made to the subscribers upon which they might rely to their detriment. There is a conflict in the evidence with respect to what was said by the president of the company in advance of this meeting, but in the face of all of the surrounding circumstances the court is unwilling to accept, as entirely accurate, the statement by the claimants of their recollection as to what was said to them by the president of the association as a preliminary to the meeting. It is worthy of note in this connection that the receipt which the claimants signed bears no provision or suggestion that the money was intended merely as a loan upon certain conditions. Also it is rather significant that, out of some 25 other shareholders who made the same sort of pro rata subscription, not a single one has filed any claim in the bankruptcy proceeding for a return of his subscription or any part thereof. The two shareholders who, in addition to the president of the association, testified with respect to their subscriptions, stated that they understood their subscriptions were in the nature of donations. Add to all these facts the further significant circumstance that the present claimants, after making their subscription, withdrew funds from their deposit account on six separate occasions, such withdrawals aggregating $800, but on none of these occasions, nor at any other time until February, 1927 (that is, some 15 months after the subscription was made), did they make any demand upon the association, or assert that their subscription was qualified, as they now claim it to be.

Even if the weight of the evidence were to the effect that the president of the association had made the representations as claimed, the question would still arise as to his authority to bind the association, without more, in doing so. But, on the evidence as it appears, it is unnecessary to decide this question.

The exceptions to the referee's findings must therefore be overruled.